UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOWAYNE R. BARTLEY,<br><br>        *Plaintiff*,<br><br>-against-<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (USCIS); CHAD WOLF, ACTING SECRETARY, DEPARTMENT OF HOMELAND SECURITY; NEW YORK ASYLUM OFFICE, USCIS; KENNETH T. CUCCINELLI, ACTING DIRECTOR, USCIS; JENNIFER HIGGINS, ASSOCIATE DIRECTOR, REFUGEE, ASYLUM AND INTERNATIONAL OPERATIONS, USCIS; ANDREW DAVIDSON, ACTING CHIEF OF THE ASYLUM DIVISION, USCIS; MATTHEW D. EMRICH, ASSOCIATE DIRECTOR, FRAUD DETECTION AND NATIONAL SECURITY DIRECTORATE, USCIS; and PATRICIA MENGES, DIRECTOR, NEW YORK ASYLUM OFFICE, USCIS,<br><br>        *Defendants* | Civil Action No. 19-cv-6949<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND ACTION IN MANDAMUS**

## INTRODUCTION

1. For generations, the United States has been a haven for immigrants seeking opportunity and upward mobility. *See, e.g.,* John F. Kennedy, *Nation of Immigrants* (1958); Emma Lazarus, *The New Colossus* (1883) (welcoming "your tired, your poor, your huddled masses"). After the failures of the global community to protect refugees during World War II and Jews, Gypsies, homosexuals and others in the Holocaust, the United States and the international community recognized that "All human beings are born free and equal in dignity and rights" and that "Everyone has the right to seek and to enjoy in other countries asylum from persecution." The Universal Declaration of Human Rights (Dec. 10, 1948), Art. 1, 11.

2. Plaintiff Towayne R. Bartley ("Plaintiff" or "Mr. Bartley") came to the United States to escape life-threatening persecution and obtain asylum. Mr. Bartley is a gay man who fled harassment, threats, and violence in Jamaica. Mr. Bartley lives in constant fear of being sent back to Jamaica, where he may be killed or attacked due to the prevalence of persecution of gay men.

3. Plaintiff is not hiding in this country. Mr. Bartley lawfully presented to the United States Citizenship and Immigration Service ("USCIS") his meritorious claim for asylum. Since then, USCIS has failed to comply with its duty to adjudicate his claim. Immigration and Nationality Act ("INA"), § 208(a), 8 U.S.C. § 1158(a). Instead, Plaintiff has waited over three years without USCIS scheduling his asylum interview or adjudicating his claim for asylum, and there is no likely end in sight to his waiting for a chance to have his claim heard.

4. Under policies USCIS enacted in January 2018, Plaintiff's asylum application has been placed in a de facto indefinite suspension and may never be adjudicated by USCIS. Defendants have, therefore, violated their non-discretionary, statutory duty to schedule an asylum interview and adjudicate Plaintiff's asylum claims.

5. USCIS' inaction has left Plaintiff in limbo, suffering uncertainty and an inability to settle into a stable and secure life.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, and 28 U.S.C. § 1651 because Plaintiffs ask this Court to compel Defendants, officers of the United States, to perform their duty owed under INA § 208(d)(5)(A)(ii)-(iii), 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii).

7. Jurisdiction is also conferred on this Court pursuant to 5 U.S.C. § 704 as Plaintiff is aggrieved by adverse agency action which this Court is authorized to remedy under the Administrative Procedures Act, 5 U.S.C. §§ 702 *et seq.*

8. Plaintiff seeks costs and fees pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. §§ 2412(2) *et seq.*

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because this judicial district is where the Defendants, acting through the New York Asylum Office of the United States Citizenship and Immigration Services, have failed to take action required by law.

**THE PARTIES**

10. Plaintiff Towayne R. Bartley is a Jamaican subject who currently lives in Staten Island, New York. Mr. Bartley submitted a Form I-589 Application for Asylum and Withholding of Removal to USCIS on July 18th, 2016.

11. Mr. Bartley is attending school, training to obtain certification in the treatment of those with addictions. Mr. Bartley at the same time is working at an addiction treatment facility in Staten Island. With these credentials, Mr. Bartley will be able to launch his career in this vital health-care treatment sector.

12. Defendant USCIS assigned Plaintiff's asylum application to the New York Asylum Office, which has yet to schedule an interview for Plaintiff.

13. Defendant USCIS is an agency of the United States Department of Homeland Security ("DHS") charged with, *inter alia*, scheduling asylum interviews and adjudicating applications for asylum.

14. Defendant Chad Wolf is the acting Secretary of the DHS and oversees DHS. In his official capacity, he is charged with the administration and enforcement of the INA, has the authority to determine the refugee status of applicants pursuant to 8 U.S.C. § 1158(b)(1)(A), and is authorized to delegate such powers and authority to employees of DHS, including those of USCIS. *See* 8 U.S.C. § 1103(a)(1). Defendant Wolf is named in this complaint in his official capacity.

15. Defendant the New York Asylum Office, located at 1065 Stewart Avenue, Suite 200, in Bethpage, New York, is an office within USCIS and the federal agency with direct authority and responsibility to schedule Plaintiff's asylum interview and adjudicate Plaintiff's Asylum Application.

16. Defendant Kenneth T. Cuccinelli is the Acting Director of USCIS, the Agency charged with scheduling Plaintiff's asylum interview and adjudicating Plaintiff's Asylum Application. Defendant Cuccinelli is named in his official capacity.

17. Defendant Jennifer Higgins is USCIS' Associate Director for Refugee, Asylum and International Operations. She has supervision over all asylum offices, including the New York Asylum Office. Ms. Higgins requires that some asylum applications be forwarded to headquarters before final adjudication. Defendant Higgins is named in her official capacity.

18. Defendant Andrew Davidson, upon information and belief, is the Acting Chief of the Asylum Division within USCIS. Defendant Davidson is named in his official capacity.

19. Defendant Matthew D. Emrich is USCIS' Associate Director of the Fraud Detection and National Security Directorate. He has supervision of all USCIS staff who review Asylum Applications to ensure that immigration benefits are not granted to individuals who pose a threat to national security or public safety, or who seek to defraud the immigration system. Certain applications must be reviewed by the Fraud Detection and National Security Directorate before their final adjudication. Defendant Emrich is named in his official capacity.

20. Defendant Patricia Menges is the Director of the New York Asylum Office, to which Plaintiff's asylum case has been assigned. Defendant Menges is named in her official capacity.

## FACTS

**A. Defendants Have a Statutory Duty to Process Plaintiff's Asylum Applications**

21. Individuals who fear persecution in their countries of origin can affirmatively seek asylum in the United States. In order to do so, applicants must submit an Asylum Application to USCIS. After receiving the Asylum Application, USCIS is responsible for scheduling an asylum interview in order to process the Asylum Application. Under INA 208 § 1158(a), 8 U.S.C. § 1158(a), USCIS has a non-discretionary duty to adjudicate Plaintiff's asylum claims.

22. "[I]n the absence of exceptional circumstances, the initial interview or hearing on the asylum application ***shall*** commence ***not later than 45 days*** after the date an application is filed." Immigration and Nationality Act, INA 208 § 1158(d)(5)(A)(ii), 8 U.S.C. § 1158(d)(5)(A)(ii) (emphasis added). Following this interview, USCIS must issue a decision on the application. The relevant statute provides that, "in the absence of exceptional circumstances,

4

final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(iii).

23. As set forth in greater detail below, Plaintiff fears persecution in Jamaica and has a meritorious claim for asylum. Mr. Bartley filed the requisite Form I-589 Application for Asylum and Withholding of Removal but, at the time this Complaint was filed, USCIS had not scheduled the Plaintiff for an asylum interview despite USCIS' statutory duty and despite Plaintiff having filed his application more than three years ago.

**B.     Plaintiff's Meritorious Claim for Asylum**

24. Plaintiff is a gay man who fled Jamaica after escalating hate attacks against him and sexual assaults, including by the very Jamaica Constabulary Force to which Mr. Bartley turned for protection. His persecution culminated in his property being set on fire. Individuals perceived to be gay face grave persecution in Jamaica, as repeatedly documented by the U.S. State Department and many other monitoring groups. Gay Jamaican men are at a high risk of being attacked, sexually assaulted and even killed, and the Jamaican police and government are both unwilling and unable to protect them. In view of the past persecution he has suffered and his knowledge of the persecution of other gay Jamaican men, Plaintiff has a well-founded fear that he will be persecuted on account of his membership in the social group of gay Jamaican men.

**C.     Particular acts of persecution**

25. It is quite notable that—throughout the mounting persecution he endured in Jamaica - Mr. Bartley remained an upstanding citizen. He contributed - prior to the pastor's expulsion of him - to his church, serving as a sign-language teacher and choir director. Mr. Bartley further contributed as youth choir prison mission server.

26. Despite his contributions, throughout high school in Westmoreland, Jamaica, Mr. Bartley was constant harassed, until in his senior year (2007) a school mate called Big Wheel hit him with a bat, shouting anti-gay slurs. Mr. Bartley went to the police, where Police Constable Dushane Campbell pointed his revolver at Plaintiff and forced Plaintiff to give him oral sex. For two months PC Campbell forced Mr. Bartley to perform sexually for him, once even coming to school when Mr. Bartley didn't answer his phone call.

27. Mr. Bartley confided in Pastor Williams of his church, but the pastor outed Mr. Bartley to the congregation, "dismembering" Plaintiff from the church. The members of the church turned against him, and Mr. Bartley's mother was hospitalized from the trauma.

28. To avoid further trouble, Plaintiff moved to Montego Bay and did not see his family. Nonetheless, Pastor Williams came all way to Montego for the sole purpose of entreating Mr. Bartley's new pastor to expel Mr. Bartley from his new church.

29. In Montego Bay one evening (November 2014) Mr. Bartley was walking when two men started following him. One of them said "Batty boy [equivalent of "faggot"], you need fi dead, we nuh want no batty boy in our community." Then the other man came behind Mr. Bartley, held his hand and both tried to attack him. Mr. Bartley broke free and jumped in a taxi that took him to the police station. For 90 minutes Mr. Bartley tried to get their help, but he was ignored.

30. Later Mr. Bartley took in a roommate who brought men over, and suddenly the neighbor's gardener stopped speaking to Mr. Bartley. Friendly before, the gardener started singing in the yard about "batty boy."

31. Shortly thereafter (December 2015) someone started a fire in Mr. Bartley's yard. He went to the police, but they gave no assistance, but instead simply told Mr. Bartley that he ought to move.

32. The police thus—far from protecting Plaintiff from violence - instead perpetrated violence on Mr. Bartley, pulling a gun on him and repeatedly sexually assaulting him or - at best - ignoring him. Jamaica's buggery laws mean Mr. Bartley's sexual life is a crime.

33. Now with the fire that was set, Mr. Bartley concluded he was no longer safe in his own home.

34. Because Mr. Bartley is gay he has been assaulted by a classmate with a bat, assaulted on the streets, had his yard set on fire, and when he has gone to the police he has been forced at gunpoint to perform sexually. There is no question that this treatment, and likely worse would have continued had he stayed. And there is no question that this treatment, and likely worse, will resume if he returns.

35. Mr. Bartley has exhausted all available administrative remedies to obtain an asylum interview. His application has been pending for over three years.

**D.** **Defendants' Failure to Comply with Their Statutory Duty to Adjudicate Plaintiff's Asylum Claim Has Prejudiced Plaintiff by Leaving Him in Legal Limbo for Years**

36. Plaintiff affirmatively applied for asylum.

37. Defendants' failure to schedule an asylum interview and adjudicate Plaintiff's asylum application has been very prejudicial. Plaintiff wants to live safely and is building a permanent life in the United States, where he will be free from the persecution and threats to his life that he faces in Jamaica. However, having his claim for asylum unadjudicated makes it impossible for Plaintiff to make long-term plans for the future and leaves him in perpetual fear that he will be forced to return to Jamaica.

38. Defendants' delay in adjudicating Plaintiff's claim is prejudicing Mr. Bartley's ability to obtain asylum. With the passage of years, memories will fade, increasing the risk that he will forget details and give inconsistent testimony, and it will be harder to obtain evidence and witnesses to corroborate Plaintiff's claim.

E. **Defendants Violated Their Duty to Schedule an Asylum Interview and Adjudicate Plaintiff's Claim for Asylum**

39. In January 2018, USCIS adopted a last in, first out policy for scheduling asylum interviews. Under this policy, applicants are divided up into three pools. First-priority applicants are those being rescheduled for interviews that were previously cancelled by either the applicant or USCIS. Second priority goes to new applications pending 21 days or less. Third priority goes to those in the "asylum backlog" who are waiting for interviews, starting with the most recently added applicant. (Ex. A, Affirmative Asylum Interview Scheduling website). Under these procedures, Defendants have effectively placed Plaintiff's asylum application in an indefinite suspension, such that his claim may never be adjudicated. Moreover, under this policy, USCIS has clearly failed to perform its statutory non-discretionary duty to adjudicate Plaintiff's asylum claim.

40. Statistics released by USCIS illustrate that it will be nearly impossible for Plaintiff, and others in the backlog, to receive an interview. This is because applicants in the backlog will be scheduled for an interview *only* if all newly filed applicants have already received interviews. But based on publicly available information and on information and belief, every month USCIS conducts hundreds to thousands fewer asylum interviews than the number of new applications it receives. Thus, the number of applicants waiting in the backlog increases each month, and applicants are not being pulled from the backlog to receive interviews. For example, in January 2019, USCIS received or reopened 6,722 asylum applications, but held only

6,597 interviews and adjudicated 5,484 cases in total, yet further increasing the backlog. (Ex. B, Asylum Statistics for Jan. 2019 at 1). In March 2019, the most recent month for which USCIS published statistics, USCIS received 7,708 applications and reopened 97, but held only 5,641 interviews and adjudicated only 5,822 cases. (Ex. C, Asylum Statistics for March 2019 at 1). USCIS' most recent public statistics indicate that the total backlog of asylum cases across all asylum offices is 327,984, which is up from the backlog of 325,277 in January 2019 and from the backlog of 313,995 cases in January 2018, the month USCIS adopted the new policy. (Ex. C at 6, Ex. D, Asylum Statistics for January 2018). Of the 327,984 cases pending in March 2019, the New York Office alone accounted for 45,892. (Ex. C at 6). The backlog of asylum seekers in legal limbo remains enormous.

41. Defendants created a system where some new applicants are randomly selected to receive an interview immediately and have their claims adjudicated within weeks. Other new applicants and applicants who applied before the change in policy are arbitrarily placed in the backlog indefinitely and, on information and belief, will not ever receive interviews under USCIS procedures. According to the American Immigration Lawyers Association, USCIS' policy "exacerbate[s] the asylum office backlog and leave[s] thousands of legitimate asylum seekers … in legal limbo indefinitely." (Ex. E, Feb. 2, 2018 AILA Practice Pointer).

42. Defendants' delay in processing Plaintiff's Asylum Application is unreasonable. USCIS' arbitrary placement of Plaintiff in the backlog, while other applicants are randomly scheduled for near-immediate interviews, renders the delay even more unreasonable. Defendants' adoption of the last-in-first-out policy violates their duty to carry out the adjudicative and administrative functions delegated to them by law with regard to the claim of Plaintiff and others in the backlog.

# COUNT ONE
## (Violation of the Administrative Procedure Act)

43. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein and incorporates them by reference.

44. Plaintiff has a statutory right to apply for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a). Defendants failed to perform this non-discretionary duty and, under Defendants' last-in-first-out policy, will continue to indefinitely delay performing this duty.

45. Plaintiff has no adequate remedy at law, and will suffer irreparable harm if Defendants do not promptly adjudicate his Asylum Application.

46. Under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), the Court is authorized to compel agency action which has been unreasonably delayed.

47. Defendants' delay in providing an interview to Plaintiff is unreasonable because:

(1) The delay is not governed by a "rule of reason." Moreover, USCIS' decision to adopt a last-in-first-out policy and, thereby, deny adjudication to older filed applications represents a failure of reason.

(2) Congress has provided a statutory deadline of 45 days to schedule and 180 days for the adjudication of asylum claims. INA § 208(d), 8 U.S.C. § 1158(d) Plaintiff has waited over three years, and more, for his claim to be adjudicated.

(3) The delay impacts every aspect of Plaintiff's life, hindering his ability to make permanent plans, move, and commit to school and to find long-term employment.

(4) The delay here is especially intolerable because it impacts Plaintiff's health and welfare, as well as his economic interests. Among the injuries Plaintiff

has suffered are an inability to see and reunite with his family, an inability to find stable housing and employment due to his uncertain legal status, and the daily psychological trauma of not knowing if he can build a new life in the United States or if he will be sent back to Jamaica where he will face a severe risk of persecution.

(5) Expediting the delayed adjudication would not impact Defendant agency USCIS' other priorities. Plaintiff does not ask USCIS to devote greater capacity to adjudicating asylum claims; rather he asks the agency to use its existing capacity to conduct the interview regarding Plaintiff's Asylum Application.

(6) Finally, Defendants' decision to adopt a last-in-first-out policy was arbitrary and capricious, and has had a disparate impact on Plaintiff's ability to obtain an interview and adjudication of his Asylum Application in contrast to those whose applications have randomly received priority treatment.

48. Having diligently followed the procedures set forth by Defendants and exhausted all administrative remedies, Plaintiff seeks a court order compelling Defendants to schedule and adjudicate his Asylum Application pursuant to 5 U.S.C. § 706(1).

## COUNT TWO
**(Administrative Procedure Act - Exceeds Statutory Authority)**

49. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

50. Under the APA, courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Defendants may exercise only authority conferred by statute. *City of Arlington v. FCC,* 569 U.S. 290, 297-98 (2013).

51. Defendants' last-in-first-out policy exceeds Defendants' statutory authority because it violates Plaintiff's statutory right to apply for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a) and the APA's requirement that Defendants' discharge this duty without unreasonable delay.

52. The last-in-first-out policy is therefore "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA. 5 U.S.C. § 706(2)(C).

53. Defendants' violation causes ongoing harm to Plaintiff.

## COUNT THREE
### (Administrative Procedure Act - Not in Accordance with Law)

54. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

55. Under the APA, a court must set "aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A). Defendants' last-in-first-out policy exceeds Defendants' statutory authority because it violates Plaintiff's statutory right to apply for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a) and the APA's requirement that Defendants' discharge this duty without unreasonable delay.

56. The last-in-first-out policy is therefore "not in accordance with law" as required by the APA. 5 U.S.C. § 706(2)(A).

57. Defendants' violation causes ongoing harm to Plaintiff.

## COUNT FOUR
### (Administrative Procedure Act—Arbitrary and Capricious)

58. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

59. The APA provides that courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

60. Defendants' last-in-first-out policy is arbitrary and capricious because they effectively created a lottery where some applicants arbitrarily receive an interview immediately and have their claims adjudicated within weeks. Others, such as Plaintiff, are arbitrarily placed in the backlog indefinitely and, on information and belief, will never receive interviews under USCIS procedures. According to the American Immigration Lawyers Association, USCIS' policy "exacerbate[s] the asylum office backlog and leave[s] thousands of legitimate asylum seekers … in legal limbo indefinitely." (Ex. E, Feb. 2, 2018 AILA Practice Pointer).

61. Defendants' last-in-first-out policy is therefore "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA. 5 U.S.C. § 706(2)(A).

62. Defendants' violation causes ongoing harm to Plaintiff

## COUNT FIVE
### (Mandamus)

63. Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein and incorporates them by reference.

64. Under the Mandamus Act, 28 U.S.C. § 1361, relief may be granted because Defendants owe Plaintiff a non-discretionary statutory duty and Plaintiff has exhausted all other avenues of relief.

65. Plaintiff has a statutory right to apply for asylum and to be considered for that relief pursuant to the Immigration and Nationality Act. INA § 208(a), 8 U.S.C. § 1158(a). Defendants have failed to perform their nondiscretionary duty.

66. Though USCIS has discretion in granting or denying applications, it has no discretion to decline to schedule interviews and to adjudicate Plaintiff's applications for asylum.

67. Aside from claims brought under the APA, *supra*, Plaintiff has no adequate remedy at law, and will suffer irreparable harm if his Asylum Application is not promptly adjudicated.

68. Having diligently followed the procedures set forth by Defendants and exhausted all administrative remedies, Plaintiff seeks a writ of mandamus or in the nature of mandamus to end Defendants' unreasonable delay and refusal to adjudicate Plaintiff's Asylum Application.

## JURY DEMAND

69. Plaintiff demands a jury trial with respect to all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

    a. Accept jurisdiction and maintain continuing jurisdiction of this action;

    b. Declare Defendants' actions in this matter an abuse of discretion and not in accordance with the law pursuant to 5 U.S.C. § 706(1), 5 U.S.C. § 706(2)(C) and 28 U.S.C. §§ 2201-02;

    c. Declare that Defendants' last-in-first-out policy is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law within the meaning of 5 U.S.C. § 706(2)(A);

d.  Issue a preliminary and permanent injunction pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling Defendants to schedule an asylum interview and make a determination on Plaintiff's Form I-589 Application for Asylum and Withholding of Removal;

e.  Issue a writ of mandamus or in the nature of mandamus, pursuant to 28 U.S.C. § 1361, 28 U.S.C. § 1651, and/or 5 U.S.C. § 706(1), compelling Defendants to schedule an asylum interview and make a determination on Plaintiff's Form I-589 Application for Asylum and Withholding of Removal;

f.  Grant attorneys' fees and costs of this suit under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412(2), *et seq.*; and

g.  Grant such other relief as the Court deems necessary and proper.

Dated: December 11, 2019

ROBINS KAPLAN LLP

_____
Jeffrey Alan Hovden
Alexander Newman
ROBINS KAPLAN LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 980-7400
Tele facsimile: (212) 980-7499
jhovden@robinskaplan.com
anewman@robinskaplan.com

*Pro Bono Attorneys for Plaintiff*